**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

FILED by _UM_ D.C.

AUG 3 0 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

| | |
|---|---|
| LIZ EDDY DBA HOSTSPHERE.COM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil **Case No.** |
| v. | ) |
| | ) **12-cv-23153-SEITZ/SIMONTON** |
| MATCH.COM, L.L.C.; CITIZENHAWK, INC; | ) |
| and JOHN DOES 1-100, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff herein, Liz Eddy dba Hostsphere.com, an individual and resident of the State of California, demands judgment against Defendants, and states as follows.

### Introduction and Parties

1.      This is an action by Liz Eddy dba Hostsphere.com (hereinafter "Plaintiff," or "Eddy"), seeking declaratory judgment that Plaintiff's registration and use of the domain name <macth.com> (hereinafter "the Domain Name") does not constitute trademark infringement, unfair competition, or a violation of the Anti-cybersquatting Consumer Protection Act ("ACPA"), and that Plaintiff is the rightful registered name holder or registrant of the Domain Name. Plaintiff seeks to bar the transfer of the Domain Name to Defendant Match.com, LLC of Dallas, Texas, ("Match.com"), Defendant Citizenhawk, Inc. of Aliso Viejo, California ("Citizenhawk"), and Defendants John Does 1 through 100, (hereinafter "Defendant John Doe 1-100"), individuals presently unknown to Plaintiff Eddy. This action also seeks relief in the form of cancellation of U.S. Trademark Reg.Nos. 2,088,545, 3,518,254, 3,518,165, 3,299,484, 3,206, 334 and 3,323,423 for genericness. This action also seeks relief for Defendant Match.com and Defendant Citizenhawk's bad faith actions constituting civil conspiracy, common law unfair

competition and unfair competition under California Business & Professions Code Sec. 17200, et seq.

### Jurisdiction and Venue

2.      Pursuant to 28 U.S.C. §§ 2201(a) and 2202, Plaintiff seeks a declaration and judgment regarding its rights and obligations in an actual controversy within this Court's jurisdiction concerning Plaintiff's rights in and to the Domain Name. Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question under 28 U.S.C. § 1338(a), the Lanham Act, 15 U.S.C. § 1051, et seq., and the ACPA, 15 U.S.C. § 1125(d), giving this Court original and exclusive jurisdiction in a civil action arising under the trademark and cybersquatting laws of the United States.

3.      This Court has supplemental jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367(a), because they form part of the same case and controversy and derive from a common nucleus of operative facts.

4.      This Court has personal jurisdiction over Defendant Match.com, LLC, (hereinafter collectively "Match.com"), because it consented to this jurisdiction.

5.      This Court has personal jurisdiction over the remaining Defendants as they are doing business in Florida, engaged in business activities directed to Florida, committing a pattern of tortious conduct in Florida, using personal property in Florida as a means of perpetrating that conduct, and purposefully availing themselves of the opportunity to conduct commercial activities in Florida. Defendant Citizenhawk has purposefully availed itself to this forum through general business presence and by representing Defendant Match.com in the filing of a Uniform Domain Name Dispute Resolution Policy ("UDRP") arbitration complaint against Plaintiff, which could result in the transfer of the Domain Name to Defendant Citizenhawk if successful, and if such transfer is not prohibited by this Court.

6.      Venue is proper in this judicial district pursuant to Title 28 U.S.C. Section 1391(b)(2)

because a substantial part of the events giving rise to these claims occurred in this district. Venue is also proper in this judicial district pursuant to Title 28 U.S.C. Section 1391(b)(2) because the property that is the subject of this action is situated in this district, given that that registrar of the Domain Name is located in Pompano Beach, Florida, and that as discussed below, Defendants made knowing and material misrepresentations which the arbitrator relied upon in its decision to transfer the domain name in the UDRP arbitration proceeding filed by Defendants.

## THE PARTIES

7.      Liz Eddy is an individual residing in Del Mar, California doing business as Hostsphere.com.

8.·     Plaintiff Eddy has owned the macth.com Domain Name since 2000.

9.      Plaintiff has a legitimate interest in the Domain Name, and has used the Domain Name in various non-infringing manners such as development and testing of website and website algorithms for approximately twelve years without any bad faith towards Defendant Match.com.

10.     On information and belief, "Match.com, L.L.C." is a Delaware limited liability company formed in June 2008.

11.     Upon information and belief, Defendant Match.com operates websites under the under "Match"-keyword related trademarks, and has procured various U.S. federal trademark registrations and at least one pending trademark application for services that include matchmaking and other matching related services. On this basis, Defendants have asserted a meritless legal claim against Plaintiff's rightful property, the Domain Name, and an adverse decision by the National Arbitration Forum (the "NAF") arbitrator Tyrus R. Atkinson, Jr., has created an actual case and controversy for adjudication by this honorable Court.

12.     On information and belief, "Citizenhawk, Inc." is a California corporation formed in 2005.

13.     On information and belief, each John Doe Defendant has acted in concert with Defendant Match.com or Defendant Citizenhawk in respect to some or all of the unlawful conduct alleged in this Complaint.

**STATEMENT OF FACTS**

14.     Domain Names are Internet Protocol addresses that point and direct Internet users to their desired destination. Owners of domain names possess valuable rights in domain names registered to them. Domain name development and the related website and app development areas are legitimate and important multi-billion dollar industry.

15.     Over the past decade, overreaching trademark owners have sought to capitalize on this thriving market by using weak marks and generic terms registered as marks for their dictionary meanings to take advantage of the domain name dispute arbitration administrative system set up by ICANN (the California corporation that administers the Domain Name System ("DNS")), by filing arbitration legal proceedings to take valuable descriptive, generic, geographic, keyword and/or dictionary domain names away from their rightful owners. These abusive filings under ICANN's Uniform Dispute Resolution Policy ("UDRP") are increasing as they continue to threaten exiting and future development of domain name and related Internet innovation.

16.     In the instant matter, Defendants Match.com represented by Defendant Citizenhawk filed such a UDRP legal proceeding against Plaintiff regarding the Domain Name. In the UDRP complaint, Defendant alleged that, despite using the domain name for approximately twelve years with development and testing purposes, Plaintiff has no rights or legitimate interests in the Domain Name and has registered and used it in bad faith, in a manner likely to confuse consumers as to the source of Defendant's services. Defendants sought an order from the arbitration directing the transfer of the Domain Name to Defendant, thus mandating the taking from Plaintiff of its rightful property.

17.     If successful, under the provisions of the UDRP, the Domain Name would be transferred to Defendant ten business days from notification of the decision to Plaintiff, unless Plaintiff files an action in Court to overturn the arbitration decision. If unsuccessful, or at any time, Defendant Match.com may sue Plaintiff for trademark infringement and under the ACPA in federal court.

18.     Plaintiff registered the Domain Name in good faith in September 2000.

19.     Match is a common English word, and has obvious inherent, valuable meaning as a trademark for almost any business although the term match cannot be used for a trademark for services that match or for matching services. There are some 1,205 active USPTO trademark records for Match related marks in various industries, including Plaintiff's trademark registrations for Match.com issued in 1995.

20.     The term Match is used in its generic sense by many hundreds if not thousands of services online and offline to describe their match and matching related services.

21.     The registration and use of domain names comprised of generic, geographic, descriptive, keyword and/or dictionary terms is widely recognized as a good faith use.

22.     Before Plaintiff registered the Domain Name, plaintiff relied on the fact that generic terms could never be used as trademarks for their related dictionary meanings no matter how much trademark registrants assert the opposite position.

23.     Before Plaintiff registered the Domain Name, plaintiff also relied on USPTO EXAMINATION GUIDE NO. 2-99 dated September 29, 1999 entitled "MARKS COMPOSED, IN WHOLE OR IN PART, OF DOMAIN NAMES" which states that "[a] domain name is part of a Uniform Resource Locator (URL), which is the address of a site or document on the Internet. In general, a domain name is comprised of a second-level domain, a "dot," and a top-level domain (TLD). The wording to the left of the "dot" is the second-level domain, and the wording to the right of the "dot" is the TLD. Example: If the domain name is "XYZ.COM," the term "XYZ" is a second-level domain and the term "COM" is a TLD. A domain name is usually preceded in a URL by "http://www."

The "http://" refers to the protocol used to transfer information, and the "www" refers to World Wide Web, a graphical hypermedia interface for viewing and exchanging information. There are two types of TLDs: generic and country code." It also states that "[g]eneric TLDs are designated for use by the public. Each generic TLD is intended for use by a certain type of organization. For example, the TLD ".com" is for use by commercial, for profit organizations," and that under Section V. Generic Refusals, "[i]f a mark is composed of a generic term(s) for applicant's goods or services and a TLD, the examining attorney must refuse registration on the ground that the mark is generic and the TLD has no trademark significance." It also states that "[m]arks comprised of generic terms combined with TLDs are not eligible for registration on the Supplemental Register, or on the Principal Register under Trademark Act §2(f), 15 U.S.C. §1052(f)" and that "[t]his applies to trademarks, service marks, collective marks and certification marks." It cites as an example "BANK.COM for banking services is unregistrable on either the Principal or Supplemental Register."

24.     After registering the Domain Name, Plaintiff made demonstrable efforts to use the Domain Name for testing and development and did use the domain name for testing of patent pending algortithms.

25.     Plaintiff did not register the Domain Name with the intent to sell it to Defendant Match.com nor did Plaintiff register or use the domain name to disrupt the Defendant Match.com's business, nor did Plaintiff register the Domain Name to confuse consumers trying to find the Defendant Match.com's website.

26.     On July 6th, 2012 Defendant Match.com, via its representative Defendant Citizenhawk, filed a UDRP Complaint with the National Arbitration Forum ("NAF"). In the UDRP complaint, Defendants allege that the Domain Name is confusingly similar to Defendant Match.com's trademark, that Plaintiff has no legitimate rights to or interest in the Domain Name and that Plaintiff registered and is using the Domain Name in bad faith.

27.     Upon information and belief, Defendant Citizenhawk is corporation that acts as

representatives in the field of brand enforcement by sending large amounts of cease and desist communications to domain name owners and, since 2006, by the act of representing clients in over three hundred and eight arbitration legal proceedings at the NAF against domain name owners worldwide.

28.     In the UDRP Complaint, Defendant Match.com was represented by Defendant Citizenhawk and Defendants requested the remedy of transfer of the Domain Name.

29.     Upon information and belief, Defendant Citizenhawk, a California Corporation based in Aliso Viejo, Orange County, California, was not and is presently not a law firm registered by the State of California to practice law in the State of California or elsewhere.

30.     Upon information and belief, the UDRP Complaint was signed by a Citizenhawk member Brody Stout whom is not a member of the California bar or any other State bar and whom is not licensed to represent others in legal proceedings including arbitration legal proceedings. Brody Stout is listed on Defendant Citizenhawk's website as acting Chief Operating Officer of Defedant CitizenHawk.

31.     Citizenhawk, Inc. representative Brody Start certified in the last paragraph of the UDRP Complaint that "the assertions in this Complaint are warranted under these Rules and under *applicable law*." (emphasis added)

32.     Upon information and belief, Defendant Citizenhawk employs no licensed attorneys, active members of the California bar or active members of any other State bar.

33.     When Plaintiff's counsel challenged Defedant Citizenhawk's standing to represent Defendant Match.com, Defendant Citizenhawk entered into evidence an authorization signed by Defendant Match.com's legal counsel to show "proof of authorization of representation."

34.     Defendants also stated in the UDRP complaint that Defendant Citizenhawk sent a "Cease and Desist" letter to Plaintiff informing the Plaintiff that it was infringing on Defendant Match.com's IP rights.

35.     Plaintiff did not and has not ever received a letter from either Defendant Match.com or Defendant Citizenhawk. After the UDRP was initiated by Defendants, Plaintiff located an email in Plaintiff's spam inbox apparently sent by Defendant Citizenhawk which included legal analysis and which asserted that Plaintiff was infringing Defendant Citizenhawk's client's trademark rights.

36.     Defendants entered evidence along with the UDRP Complaint, Exhibit H of the UDRP Complaint, in which one or both of Defendants or their agents self generated.

37.     Upon information and belief, Defendant Match.com and / or Defendant Citizenhawk, or their agent, placed a bid to have Defendant's Match.com's advertisement for matching services displayed in response to Internet searches for the word 'macth.' Dedendants then used the advertisement shown on Plaintiffs webpage as result of Plaintiff's adverting provider Google.com to self generate evidence purporting to show evidence in support Defendant's claim of Plaintiff's bad faith registration and use of the Domain Name, something the Defendants could not show absent fabricating this evidence. Plaintiff did not cause Defendant Match.com's website to be reachable on the webpage shown, rather Defendants or their agents did by paying to put their MATCH.COM advertising link at the top of the web page.

38.     Defendants materially misrepresented the nature of the Plaintiff's web page / site by presenting a "true and correct copy" of the Plaintiffs' web page as an exhibit to its UDRP complaint while altering the web page with their own actions to make the web page appear to be suggesting that it redirected visitors to other Defendant's Match.com's website for profit.

39.     The term "macth" in the Domain Name macth.com is also a generic term when used for services found under the corresponding dictionary definition for match and under U.S. trademark law, mere misspellings of descriptive terms do not transform the words into a trademark. Thus, Plaintiff's registration and use from September 2000 was lawful from the outset.

## Defendants' Activities that Create a Claim for Unfair Competition

40.     Plaintiff realleges all of the foregoing paragraphs of this Complaint.

41.     Defendant's activities towards Plaintiff constitute unfair competition under common law, Florida law and pursuant to Cal. Bus. & Prof. Code § 17200, et seq. Defendant's activities are unlawful, unfair and fraudulent; they constitute an illegitimate attempt to obtain Plaintiff's property without just compensation, and an illegitimate attempt to enforce trademark rights far beyond any reasonable interpretation of same.

42.     These activities are unlawful, unfair and fraudulent insofar as third parties may believe Defendants' assertions, and Plaintiff's reputation and business is likely to suffer accordingly.

43.     Moreover, these activities cast a legal cloud on Plaintiff's title to its valuable Domain Name property, rendering such property more difficult if not impossible to sell for its full market value, and thus effectively disabling such property. This obviously causes economic harm to Plaintiff.

44.     Plaintiff reasonably believes that her registration and use of the Domain Name was and is lawful under the Lanham Act.

## COUNT I: CLAIM FOR DECLARATORY RELIEF

45.     Plaintiff realleges all the foregoing paragraphs of this Complaint.

46.     Plaintiff rightfully registered and has used the Domain Name in good faith, and with neither knowledge of Defendant Match.com's claimed exclusive rights in the generic term MATCH.COM for services described in the dictionary for that same term, nor intent to sell the Domain Name specifically to Defendant Match.com. Plaintiff had no intention of diverting any traffic from Defendant Match.com's website and avers that there is no evidence that such has occurred.

47.     In registering the Domain Name, Plaintiff had a legitimate interest in the inherent, generic value of the Domain Name and has used the Domain Name consistently with such purpose.

48.     MATCH, MATCH.COM and its related misspellings are common, generic words when used with matchmaking and matching services. Defendant's Match.com's asserted rights in the MATCH family of registrations are not exclusive and each must be canceled for being generic. Defendant Match.com does not have the exclusive right to the use of the term "Match" as a trademark

for services that are described in the dictionary for the term "Match" or for services that closely related

to those dictionary terms including the services of matching and matchmaking.

49.   Plaintiff requests that Defendant Match.com's trademark registrations, numbers

2,088,545, 3,518,254, 3,518,165, 3,299,484, 3,206,334 and 3,323,423 for matchmaking and related

matchmaking services be canceled on the ground of being generic as the term "MATCH" is commonly

understood by the relevant consuming public to indicate a matching service as well as a matchmaking

service as these asserted service mark registrations are incapable of serving as a means by which the

services of the registrant may be distinguished from the services of others. Because Defendant

Match.com's service marks are incapable of acquiring distinctiveness and because the registered

service marks fail to function as a mark within the meaning of the Trademark Act 15 U.S.C. §§1051,

1052 and 1127, each is not a service mark and each can never be registered under the Lanham Act.

Accordingly. each of these registrations should be canceled.

50.   Plaintiff believed and had reasonable grounds to believe, based on the market for

generic domain names, as well as prior legal decisions and decisions under the UDRP and the ACPA

(and their predecessor case law, to the extent any existed in 1995), that the registration and use of the

Domain Name as a generic term and in connection with non-infringing related business endeavors was

lawful.

51.   For approximately twelve years, Plaintiff has had quiet enjoyment of her property in

good faith, never hearing any complaint from Defendant or anyone else about her ownership of the

Domain Name. Defendant's should be barred from making any claim under the doctrine of laches.

52.   Defendants filed the UDRP complaint in bad faith, contending that Plaintiff registered

and used the Domain Name in bad faith when they had no such right to file the UDRP.

53.   Defendant Citizenhawk filed the UDRP as representative of Defendant Match.com with

full approval and written authority did so unlawfully and such approval was unlawful under the laws of

the State of California, wherein Defendant Citizenhawk and its members are domiciled, in the State of

Minnesota, wherein the UDRP was filed and prosecuted, and State of Texas, wherein Defendant

Match.com and its counsel are domiciled, and in the State of Florida, where in the property is

registered.

54.     The UDRP provides that administrative panel decisions may be stayed, and that subject

domain name disputes may be resolved in a court of competent jurisdiction – regardless of the UDRP

panelists' findings. The federal courts have held that such review is to be made de novo.

55.     A justifiable controversy exists between Plaintiff and Defendants.

56.     To resolve this actual controversy, Plaintiff seeks a declaration and judgment that its

registration and use of the Domain Name is with the legitimate interest of exploiting its inherent value

as a generic term, and/or is consistent with documented legitimate business efforts, and constitutes

good faith use. Plaintiff seeks to remove the legal cloud over title to Plaintiff's valuable property, which

has been created by Defendants' actions.

## COUNT II: CLAIM FOR COMMON LAW UNFAIR COMPETITION

57.     Plaintiff realleges all the foregoing paragraphs of this Complaint.

58.     Defendants have filed a UDRP complaint against Plaintiff and Defendant Citizenhawk

representing Defendant Match.com has threatened legal proceedings under ACPA as well as other laws

against Plaintiff contending that Plaintiff used the Domain Name in violation of anti-cybersquatting,

trademark and unfair competition laws.

59.     Defendants' wrongful actions, misrepresentations and baseless accusations of

infringement have created a cloud on Plaintiff's title to the Domain Name.

60.     As a result of Defendant's past and continued wrongful acts, Plaintiff has incurred

damages in an amount to be proved at trial, including compensation for Plaintiff's time, effort,

attorneys' fees, and other signifigant expenses in defending against Defendant's baseless claims.

61.     WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the

Prayer for Relief.

## COUNT III: CLAIM FOR UNFAIR COMPETITION

## UNDER CAL. BUS. & PROF. CODE SEC. 17200

62.     Plaintiff realleges all the foregoing paragraphs of this Complaint.

63.     This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. §
1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

64.     Defendants' wrongful acts, as described in this Complaint, are unlawful, unfair and
fraudulent, and cause damage to Plaintiff and injure its business, in violation of section 17200 of the
California Business and Professions Code.

65.     As a result of Defendant's past and continued wrongful acts described herein, Plaintiff
has incurred damages in an amount to be proved at trial, including compensation for Plaintiff's time,
effort, attorneys' fees, and other expenses in defending against Defendant's baseless claims.

66.     WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the
Prayer for Relief.

## COUNT IV: VIOLATION OF FLORIDA DECEPTIVE AND

## UNFAIR TRADE PRACTICES BY ALL DEFENDANTS

67.     Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

68.     This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. §
1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

69.     Defendants, by their acts aforesaid, have engaged, and are engaging, in "[u]nfair
methods of competition, ... and unfair [and] deceptive acts or practices in the conduct of ... trade or
commerce" in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §
501.204(1).

70.     WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the
Prayer for Relief

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a.      a declaration that Plaintiff has not infringed and is not infringing the trademark rights of

Defendant Match.com;

b.      an award of costs and fees to Plaintiff under 15 U .S.C. 1114(2)(D)(IV);

c.      an order pursuant to 15 U.S.C. § 1119, directing the Commissioner of Patents and Trademarks

to cancel U.S. Trademark Registration Nos. 2,088,545, 3,518,254, 3,518,165, 3,299,484, 3,206,334 and

3,323,423 for matchmaking and related matchmaking services on the ground of genericness.

d.      a declaration that Plaintiff has not violated and is not violating unfair competition law;

e.      a declaration that Plaintiff has not violated and is not violating the ACPA;

f.      a declaration that Plaintiff registered and has used the Domain Name in good faith and is the

rightful registrant of the Domain Name;

g.      a finding awarding Plaintiff monetary compensation for damages sustained by Defendants'

wrongful actions as alleged in this Complaint;

h.      For costs, attorney fees and expenses pursuant to Section 35(a) of the Lanham Act, 15 U.S.C.

§1117(a), and Fla.Stat. §501.2105.

    i.   such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that all issues in this case so triable by a jury be decided by a jury.

Respectfully submitted,

Dated: _08/28/2012_

Liz Eddy DBA HOSTSPHERE.COM
Email: docket@hostsphere.com
2683 Via De La Valle, Suite G510
Del Mar, CA 92014
Telephone: (619) 885-8500
Facsimile: (800) 743-9260
Pro se

AO 120 (Rev. 08/10)

| TO: | Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been
filed in the U.S. District Court     Southern District of Florida     on the following

☑ Trademarks or   ☐ Patents.   (   ☐ the patent action involves 35 U.S.C. § 292.): ·

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT<br>Southern District of Florida |
|---|---|---|
| PLAINTIFF<br><br>Liz Eddy, an individual | | DEFENDANT<br><br>Match.com, L.L.C. |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 2,088,545 | 8/19/1997 | Match.com, L.L.C |
| 2 | 3,518,254 | 10/14/2008 | Match.com, L.L.C |
| 3 | 3,518,165 | 10/14/2008 | Match.com, L.L.C |
| 4 | 3,299,484 | 9/25/2007 | Match.com, L.L.C |
| 5 | 3,206,334 | 2/6/2007 | Match.com, L.L.C. (see continuation page for additional marks) |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | |
|---|---|---|
| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director
Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy

Continuation Sheet
for Trademarks involved in Civil Action No. _____
Liz Eddy v. Match.com, L.L.C., *et al.*

| | Patent or Trademark No. | Date of Patent or Trademark | Holder of Patent or Trademark |
|---|---|---|---|
| 6. | 3,323,423 | 10/30/2007 | Match.com, L.L.C. |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |

Continuation Sheet
for Trademarks involved in Civil Action No. _____
Liz Eddy v. Match.com, L.L.C., *et al.*

|  | Patent or Trademark No. | Date of Patent or Trademark | Holder of Patent or Trademark |
|---|---|---|---|
| 6. | 3,323,423 | 10/30/2007 | Match.com, L.L.C. |
| 7. |  |  |  |
| 8. |  |  |  |
| 9. |  |  |  |
| 10. |  |  |  |