

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 12-23153-CIV-COOKE/TURNOFF**

LIZ EDDY D/B/A HOSTSPHERE.COM,

     Plaintiff and Counter-Defendant,

v.

MATCH.COM, L.L.C.; CITIZENHAWK, INC;
and JOHN DOES 1-100,

     Defendants and Counter-Plaintiffs.
_____/

**PLAINTIFF / COUNTER-DEFENDANT LIZ EDDY'S MOTION TO DISMISS**
**AND**
**INCORPORATED MEMORANDUM OF LAW**

     Pursuant to Fed.R.Civ.P. 12(b)(6), Plaintiff / Counter-Defendant Liz Eddy doing business as Hostsphere.com ("Plaintiff Eddy" or "Eddy") hereby moves for dismissal of the seven causes of action alleged in the Counterclaim for Federal Trademark Infringement, Federal Unfair Competition, False representation and False Designation of Origin, Federal Dilution, Violation of Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), Florida's Unfair and Deceptive Trade Practices Act, Common Law Trademark Infringement, and Common Law Unfair Competition by defendant Match.com, LLC ("Defendant Match.com, LLC") (the "Counterclaim") on the following grounds:

     1.     All of Defendant Match.com, LLC's causes of action are based on the argument that Plaintiff Eddy, the registrant of the Domain Name macth.com (the "Domain Name",) used the Domain Name in commerce – i.e., that the Domain Name registrant used the Domain Name as  a unique indicator or signal of the source of related goods or services. However, Defendant Match.com, LLC's own evidence used with the UDRP Complaint filed by

Defendant Citizenhawk as legal representative of Defendant Match.com, LLC (attached herein as Exhibit 1) and Defendant Match.com, LLC's own statements in its Counterclaim show that the Plaintiff Eddy did not and does not presently use the Domain Name to promote any goods or services in connection with Defendant Match.com, LLC's "MATCH" family of marks (the "Asserted Marks") – or any other marks. Exhibit 1 instead shows that the website associate with the Domain Name displays Internet search results upon entry of the Domain Name in a web browser bar and that Defendant Match.com, LLC itself or through its agents placed its own advertisement so a link to its website with a description of its website appears within the search results. The displaying of search results is not use "in commerce" with goods or services and, as such, Defendant Match.com, LLC's Counterclaim should be dismissed.

2.        Defendant Match.com, LLC's Counterclaim for Cybersquatting does not provide a sufficient factual basis to allege that Plaintiff Eddy's activities constitute a violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA".)  The ACPA provides a cause of action for a trademark owner against a person who "has a bad faith intent to profit from [the owner's] mark" and who "registers, traffics in, or uses a domain name" that (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; or (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or (III) is a trademark, word, or name protected by reason of section 706 of Title 18 [protecting the Red Cross insignia] or section 220506 of Title 36 [protecting trademarks associated with the Olympic Games]. Defendant Match.com, LLC's Counterclaim for Cybersquatting fails because Defendant Match.com, LLC's only Asserted Mark at that time the Domain Name was registered ( in September 2000) was for the generic term "MATCH.COM" for services that specifically include as well as relate to matching services. The Asserted Marks

are neither distinctive nor famous, and none of the Asserted Marks were distinctive or famous in September 2000 when the Domain Name was registered. Additionally, Defendant Match.com, LLC failed to allege that one or more of its Asserted Marks were famous as of the date of the registration of the Domain Name and it failed to allege any facts that would show any "bad faith intent to profit from [the owner's] mark" whatsoever.  As such, Defendant Match.com, LLC's claim for Cybersquatting must be dismissed.

3.       Defendant Match.com, LLC's allegations also does not provide a sufficient factual basis to allege that the Asserted Marks can ever function as common law trademarks for anything related to matching services. The term "match" for Defendant Match.com, LLC's matching services is generic as they are for anything related to matching services. Thus, the word "MATCH" alone or in combination with ".COM" can never be claimed by Defendant Match.com, LLC's as an exclusive trademark for matching services or any matching related services. Thus, on this ground alone, Defendant Match.com, LLC's entire Counterclaim should be dismissed.

4.       Defendant Match.com, LLC's allegations also do not provide a sufficient factual basis to allege their fifth through seventh Claims for State and Common law causes of actions since the Alleged Marks are generic for matching services and any related to matching services and because the Domain Name was not used in connection with goods or services.

## MEMORANDUM OF LAW

I.       **INTRODUCTION AND BACKGROUND**

A.       **Allegations Concerning Plaintiff Eddy's Alleged Use of the Domain Name**

Defendant Match.com, LLC's  Claims are also based on the allegation that Plaintiff Eddy used the Domain Name in a manner "directing Internet traffic away from Match's Website and utilizing (or permitting third parties to utilize) the Domain Name to display, advertise, market and/or

promote competitive goods or services to those of Match's Services." (Counterclaim ¶ 25.) and "by launching various web pages that dealt with, inter alia, the promotion and marketing of on-line dating, relationship and introduction services." (Counterclaim ¶ 27.)

However, there is no evidence or any attachments to the Counterclaim to indicate that the Domain Name is being used in commerce in connection with the promotion of goods or services identical, directly competitive or related to those sold or provided in connection with Defendant Match.com, LLC's Alleged Marks or even allegations that it is being used in commerce with any goods or services at all.

Indeed, Defendant Match.com, LLC's admits that "Eddy provided no bona fide services at the Domain Name, but instead, utilized the Domain Name to misdirect Internet users to links that lead to other websites." (Counterclaim ¶ 25.) Defendant Match.com, LLC's own UDRP Exhibit 1 shows that the Domain Name has been used only redirected Internet users to results which are provided by a third party Internet search engine. (*See* Ex. 1.) Those search results include a link to Defendant Match.com, LLC's own website because Defendant Match.com, LLC's paid to place their own website link in the internet search Engine's "Sponsored" results. (*See id.*) Critically, <u>none</u> of the search results shown in Exhibit 1 indicate that Plaintiff Eddy uses any of the Alleged Marks in connection with another party's goods or services. (*See id.*)

**B.     Alleged Federal Dilution**

Similarly, Defendant Match.com, LLC bases its federal dilution claim on alleged use "in connection with the Domain Name", a conclusory allegation which it is unable to substantiate factually. (*See* Complaint ¶¶ 46-48.) Their claims of alleged "unauthorized use" relates to the purported use of "the Domain Name to misdirect Internet users to links that lead to other websites." (*See id.* ¶ 25.)  The Federal Trademark Dilution Act requires use in

commerce of a mark or trade name in order to be able to obtain relief. 15 U.S.C. § 1125(c)(1). Here, Defendant Match.com, LLC has alleged both the absence of bona fide use in commerce of services and "use in commerce" for dilution purposes without any supporting factual allegations sufficient to support an FTDA claim. Defendant Match.com, LLC has also alleged that its Alleged Marks are so-called "famous marks" without any supporting factual allegations showing that the generic term match (alone or in combination with a generic identifier .com) could ever be famous for its matching related services which are found under the dictionary definition for that same term, match.

### C.    Alleged Violation of The ACPA

Defendant Match.com, LLC also alleges a violation of the ACPA claims on alleged bad faith use of the Domain Name in commerce. (*See* Complaint ¶¶ 56-59, 62-64, 67-68.) Plaintiff Eddy's alleged "unauthorized use" relates to the purported use of the Asserted Marks "in connection with the Domain Name" (*See id.* ¶ 48.) However, Defendant Match.com, LLC does not allege that Plaintiff Eddy ever used any of the Alleged Marks in connection with goods and services. In fact, it has alleged a complete absence of use of any marks in commerce including use in commerce with services which are similar to those offered by Defendant Match.com, LLC.

The ACPA provides a cause of action for a trademark owner against a person who "has a bad faith intent to profit from [the owner's] mark" and who "registers, traffics in, or uses a domain name" that (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; or (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or (III) is a trademark, word, or

name protected by reason of section 706 of Title 18 [protecting the Red Cross insignia] or section 220506 of Title 36 [protecting trademarks associated with the Olympic Games]. Defendant Match.com, LLC's Counterclaim for Cybersquatting fails because Defendant Match.com, LLC's only Asserted Mark at that time the Domain Name was registered ( in September 2000) was for the generic term "MATCH.COM" for services that specifically include as well as relate to matching services. This Asserted Marks are neither distinctive nor famous, and none of the Asserted Marks were distinctive or famous in September 2000 when the Domain Name was registered. Additionally, Defendant Match.com, LLC failed to allege that one or more of its Asserted Marks were famous as of the date of the registration of the Domain Name and it failed to allege any facts that would show any "bad faith intent to profit from [the owner's] mark," Defendant Match.com, LLC's conclusory statement attempting to meet the elements of this claim. As such, Defendant Match.com, LLC's claim for Cybersquatting must be dismissed.

Without factual allegations to support Defendant Match.com, LLC's conclusory allegations that Plaintiff Eddy had a bad faith intent to profit from the Domain Name and without any allegations whatsoever that any of its Asserted Marks were both distinctive and famous in September 2000 when the domain name was registered, Defendant Match.com, LLC's ACPA claim must be dismissed.

### D.     Allegations Concerning State and Common Law Causes of Action

Defendant Match.com, LLC also bases its state and common law claims on alleged use of the Domain Name in commerce. (*See* Complaint ¶¶ 56-59, 62-64, 67-68.) Their alleged "unauthorized use" relates to the purported use of the Asserted Marks "in connection with the Domain Name" (*See id.* ¶ 48.) However, Defendant Match.com, LLC does not allege that

Plaintiff Eddy ever used any of the Alleged Marks in connection with goods and services. In fact, it has alleged a complete absence of use in commerce including use with services which are similar to those offered by Defendant Match.com, LLC, an allegation which is mandatory to support their state and common law claims.

## II. ARGUMENT

### A.       Standard of Review

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) the Supreme Court held that in order to survive a motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Id.* at 1965. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65. However, this tenant does not apply to legal conclusions. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. This Court has recognized the new enunciation of the standard in a number of decisions granting motions to dismiss. *See, e.g., Garcia v. Santa Maria Resort, Inc.*, No. 07-10017-CIV, 2007 WL 4127628, *3 (S.D. Fla. Nov. 15, 2007) (King, J.); *MRI Scan Ctr., Inc. v. Allstate Ins. Co.*, No. 07-60771-CIV, 2007 WL 2288149, *1 (S.D. Fla. Aug. 7, 2007) (Cohn, J.); *Bays v. Vistas Healthcare Corp.*, Case No. 04-21431-CIV, 2007 WL 2050994, *1 (S.D. Fla. July 25, 2007) (Jordan, J.). The Counterclaim similarly fails to meet this heightened standard; indeed, Defendant Match.com, LLC's Counterclaim is replete with the type of "formulaic recitation of the elements of . . . cause[s] of action," 127 S. Ct. at 1965, condemned by the Supreme

Court in *Twombly*. Moreover, even under the prior *Conley v. Gibson* standard, "[u]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001).

To state a claim, the allegations must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Factual allegations must give enough detail to give "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a 12(b)(6) motion, the Court must consider the entire complaint including the materials incorporated into the Complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Venture, 987 F.2d at 431.

Defendant Match.com, LLC has made statements that allege various causes of actions based on conclusory statements in its attempt to meet the elements of each Cause of Action, but it did not attach the actual evidence of use of which it complains. Under these circumstances, the Court can consider the actual documents on a 12(b)(6) motion without converting the motion to a summary judgment motion under Rule 56. Documents whose contents are alleged in a complaint and whose authenticity is not questioned, but which are not physically attached to the pleading, may be considered in ruling or a motion attacking the pleadings, such as this one, without converting the motion into one for summary judgment, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) overruled on other issues, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (91 Cir. 2002); Fed. R. Civ. P. 10(c)

provides that a complaint includes any documents attached to it as exhibits or any documents incorporated into the complaint by reference.

This concept has been expanded to include documents explicitly relied on in a complaint, but not physically attached, *Haskell v. Time, Inc.*, 857 F.Supp. 1392, 1396 (E.D.Cal. 1994). Where a plaintiff has referred to a document in a complaint, but has failed to attach it in an attempt to defeat a motion to dismiss "through the artifice of not attaching the critical document to the complaint ... [,] the rationale for converting a motion to dismiss into one for summary judgment - that plaintiff must have sufficient notice – 'is largely dissipated' because the plaintiff had ample notice of a critical document on which the complaint is based." *Haskell v. Time*, supra, 857 F.Supp. at 1397, citing *Cartee Industries Inc. v. Sum Holding L.P.*, 949 F.2d 42,47-48 (2d Cir. 1991).

It is appropriate for a court to consider documents external to a complaint or Counterclaim as part of a motion to dismiss when the plaintiff has ample notice of the document at issue and no party challenges the authenticity of the documents (*Branch v. Tunnell*, 14 F.3d at 453-454; *Haskell*, 857 F.Supp. at 1397). Allowing the court to consider such documents prevents a plaintiff from evading a properly argued motion to dismiss simply because he or she has chosen not to attach the document as an exhibit to the complaint. *Haskell*, supra, at 1397 n.8. See also, *Kaufman and Broad-South Bay v. Unisys Corp.*, 822 F.Supp. 1468, 1472 (N.D.Cal. 1993). ("If the plaintiff fails to attach a pertinent document to its complaint, the defendant may introduce the document as part of a motion attacking the complaint."); 5B Wright & Miller: Federal Prac. & Proc. § 1357 (collecting cases; "Documents not attached to the pleading but whose contents are alleged in the pleading and whose authenticity are not challenged can be considered on a Rule 12(b)(6)

motion without conversion to summary judgment.") Schwarzer,  Tashima & Wagstaffe, Federal Civil Procedure Before Trial (National Edition), 119:212.1, ("Plaintiff  is not required to attach to the complaint the documents on which it is based.  But if plaintiff fails to do so, defendant may attach to a Rule 12(b)(6) motion the documents referred to in the complaint  to show that they do not support  plaintiff's claim.")

On this basis, Plaintiff Eddy requests that this Court consider the evidence entered by Defendant Citizenhawk entered as legal representative for Defendant Match.com, LLC in the UDRP proceeding previously initiated against Plaintiff Eddy. When the actual evidence is examined, it is evident that the Counterclaim fails to state causes of action for the same reasons presented in support of that motion.

## B.      Defendant Match.com LLC's Trademark Claims in Counts One and Two Fail.

The Lanham Act requires that an allegedly infringing mark be "use[d] in commerce" before an infringement can occur. 15 U.S.C. § 1125(a)(1). A mark is not used in commerce unless the alleged infringer uses it as a unique indicator of the source of the related goods or services. *See Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 163-164, 115 S. Ct. 1300, 1303-04, 131 L. Ed.2d 248 (1995) (federal trademark law prevents competitors from copying "a source-identifying mark", thus ensuring the owner will "reap the financial, reputation-related rewards associated with a desirable product.")

All of Defendant Match.com, LLC's Claims, including their Lanham Act claims, requires use of the mark in commerce as a unique indicator of the source of the related goods or services. Defendant Match.com, LLC does not allege any use in commerce, rather it alleges in Count one that Plaintiff Eddy's activities of "launching various web pages that dealt with, inter alia, the promotion and marketing of on-line dating, relationship and introduction services."

Defendant Match.com, LLC goes on to allege a complete absence of use in commerce by stating that "Eddy provided no bona fide services at the Domain Name, but instead, utilized the Domain Name to misdirect Internet users to links that lead to other websites. (Counterclaim ¶¶ 24-25).

Exhibit 1 from the UDRP proceeding also shows that Plaintiff Eddy did not use the Alleged Marks in commerce or in a trademark sense. As can be seen, Plaintiff Eddy, the Domain Name registrant, did not promote her unique goods or services in connection with the Alleged Marks. To the contrary, Exhibit 1 shows that Plaintiff Eddy instead used and uses the Domain Name to redirect users to search engine results, of the sort commonly provided by Google, Bing or Yahoo. Further, Plaintiff Eddy did not control the form or substance of the ads presented on the page, rather all content on the website associated with the Domain Name is provided by a third party search engine and Plaintiff Eddy had no authority to remove any single ad shown from the internet search results on the website. This displaying of search engine results is not a trademark use in commerce because no trademark is used to identify the source or quality of goods or services. *See Rescuecom Corp. v. Google, Inc.*, 456 F. Supp. 2d 393, 403 (N.D.N.Y. 2006) (holding there was no "trademark use as a matter of law" when defendant's web page displayed search results but "an internet user who enters [plaintiff's trademark] into Google as a search term, may still go to plaintiff's website(s) by clicking on the appropriate link on the search results page – even though he or she may have other choices.")

Further, Defendant Match.com, LLC itself, or through it agents, does have use in commerce on the website associated with the Domain Name because Defendant Match.com, LLC itself place its own advertisement for its website Match.com at the top of the

Sponsored search results shown in Exhibit 1. Defendant Citizenhawk acting as legal representative of Defendant Match.com, LLC in the UDRP proceeding introduced the search results page shown in Exhibit 1 including Defendant Match.com, LLC's own advertisement in order to show bad faith use of the Domain Name in the UDRP proceeding without disclosing to the UDRP panel that Defendant Match.com, LLC's ad was placed on the Domain Name's website by Defendant Match.com, LLC and / or its agents and apparently circled by Defendant Citizenhawk to draw the attention of the panel to that advertisement.

When the placement of the ad by Defendant Match.com, LLC was challenged by Plaintiff Eddy in the UDRP proceeding, Defendant Citizenhawk unsuccessfully attempted to withdraw the UDRP proceeding after which Defendant Citizenhawk remained silent in its Additional Submission on the issue of Defendant Match.com, LLC's own ad being placed on the Domain Name's website to support an allegation of bad faith use of the Domain Name by Plaintiff Eddy. (See Exhibit 2.) Again, in the present Counterclaim, Defendant Match.com, LLC continues to improperly allege that Plaintiff Eddy used the Domain Name by "launching various web pages that dealt with, inter alia, the promotion and marketing of on-line dating, relationship and introduction services" (Counterclaim ¶24) while at the same time failing to disclose to the Court that Defendant Match.com, LLC itself or through its agent placed its own ads for the match.com website for on-line dating, relationship and introduction services via its own advertising on the Domain Name's webpage.  Accordingly, Defendant Match.com, LLC cannot prevail on any of their Claims based on use of the Alleged Marks in a trademark sense and these Counts should be dismissed.

**C.      Defendant Match.com, LLC's Third Claim for Federal Dilution Fails.**

Defendant Match.com, LLC cites the Federal Anti-Dilution Act, 15 U.S.C. §1125(c),

as the basis for their third Claim alleging that Plaintiff Eddy's "use of the MATCH Marks in connection with the Domain Name" dilutes the Alleged Marks. (Complaint ¶ 48.) As previously stated, Defendant Match.com, LLC has also alleged that Plaintiff Eddy had "no bona fide use in commerce of goods or services." (Counterclaim ¶ 25). Defendant Match.com, LLC's own UDRP exhibit ( Exhibit 1) also shows that Plaintiff Eddy had no use in commerce of any mark in conjunction with goods or services. In actuality, the advertising that Defendant Match.com, LLC alleges misdirects users was placed on the website by third parties including the Defendant Match.com and / or its agents. Defendant Match.com, LLC's simply fails to provide a factual basis for the claim that Plaintiff Eddy is or has been using the Domain Names with its own goods or services in commerce. (Complaint ¶¶ 24-25). For a plaintiff to state a federal claim of dilution, the Complaint must contain sufficient factual allegations to support all of the following elements: "(1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark." *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 577 (6th Cir. 2000) (quoting *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 215 (2nd Cir.1999)); *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163 (3rd Cir. 2000) (listing elements "the plaintiff must plead and prove" to "establish a prima facie case" of trademark dilution) (citing 4 McCarthy, § 24:89; *Hershey Foods Corp. v. Mars, Inc.*, 998 F. Supp. 500, 504 (M.D. Pa.1998)).

Additionally, Defendant Match.com, LLC has also alleged that its Alleged Marks are so-called "famous marks" without any supporting factual allegations showing that the generic term match (alone or in combination with a generic identifier .com) could ever be

famous for its matching related services which are found under the dictionary definition for that same term, match. See *Merrill Lynch*, 828 F.2d at 1569; and *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989-90 (Fed.Cir.1986) (a generic term is the common name for the genus of goods or services being sold).

In *In re Hotels. com, LP*, 573 F. 3d 1300, the Court of Appeals affirmed a TTAB decision stating that "The TTAB found that hotels are the "focus" of the applicant's services, citing the applicant's advertisements to "[c]hoose from thousands of hotels in hundreds of cities worldwide" by visiting www.hotels.com; directing the public to "[b]ook online at www.hotels.com" and stating that "hotels.com enables you to quickly and efficiently compare accommodations by: price, quality, location ... amenities, availability...." *In re Hotels.com*, 87 USPQ2d at 1104-05. The TTAB found that the word "hotels" "names a key aspect of applicant's services, i.e., that aspect of applicant's information services and reservation services that deal with hotels," and concluded that HOTELS.COM is properly viewed in the same way and having the same meaning as the word "hotels" by itself. Id. at 1105. The TTAB found that the composite term HOTELS.COM communicates no more than the common meanings of the individual components, that is, that the applicant operates a commercial website via the internet that provides information about hotels, but adds nothing as an indication of source. Id.; see also, e.g., In re Gould Paper Corp., 834 F.2d 1017, 1018 (Fed.Cir.1987) (holding that the compound term "SCREENWIPE" is generic as applied to wipes for cleaning monitor screens).

Here, Exhibit 3 shows Defendant Match.com, LLC authorizing Defendant Citizenhawk to represent Defendant Match.com also stating that Defendant Match.com, LLC considers its services for the Asserted Marks to include "matching services" and

"matchmaking services," both dictionary terms for the term "Match". Under the Lanham Act, "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of the source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). This standard, as the statutory language indicates, is "rigorous" and "extends protection only to highly distinctive marks that are well-known throughout the country." *Green v. Fornario*, 486 F.3d 100, 105 (3d Cir.2007)  See also *Philbrick v. eNom, Inc.*, 593 F. Supp. 2d 352, at 366-367 wherein the Court stated in an action under the ACPA that "there is no way they can prove that [the asserted mark] 'Philbrick Sports' mark is famous" and that "[t]here is no legitimate dispute that "Philbrick's Sports" is descriptive, i.e., that it denotes a sporting goods business owned by or affiliated with someone named Philbrick."

Accordingly, the dilution Claim must be dismissed because Plaintiffs' Complaint does not provide facts sufficient to allege that Plaintiff Eddy is responsible for any dilution of Defendant Match.com LLC's Asserted Marks, which dilution has not even sufficiently been alleged. Moreover, the Counterclaim completely fails to allege that Plaintiff Eddy's use of the Domain Names is infringing and it fails to allege facts to support Defendant Match.com, LLC's assertion that its Alleged Marks are famous, distinctive or could ever be distinctive or famous for Defendant Match.com's matching and matchmaking services.

### D. Defendant Match.com LLC's Fourth Claim For Violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) Fails.

Defendant Match.com, LLC's fourth Claim is for violation of the Anticybersquatting Consumer Protection Act ("ACPA"). However, Defendant Match.com, LLC has failed to state a cause of action under the ACPA because it has not adequately alleged essential elements of an ACPA claim, namely that the Asserted Marks were

famous or distinctive in September 2000, the time the domain name was registered. It has also not provided facts to support its allegation that Plaintiff had a bad faith intent to profit from that mark. As previously stated, a rote recitation of the elements of a cause of action are insufficient to survive a 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662 at 678. Plaintiffs only make the conclusory allegations that "Eddy's registration and use of the Domain Name in the manner described herein is confusingly similar to and/or dilutive of the MATCH Marks" and that "Eddy has registered, has used, and/or is using the Domain Name with the bad faith intent to profit from the MATCH Marks." (Counterclaim ¶¶ 52-53). Defendant Match.com, LLC does not allege any facts which warrant the conclusion that the Domain Name was used in bad faith. In fact, Defendant Match.com, LLC;s own evidence (Exhibit 1) as well as their allegations in the Counterclaim, show that individuals and / or entities other than Plaintiff Eddy ( including Defendant Match.com, LLC) place links to websites on the webpage associated with the Domain Name.

Without factual allegations to support a conclusory allegation of bad faith intent to profit, Plaintiffs' ACPA claim must be dismissed. Id. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 198 (7th Cir. 1985) ("Even the liberal notice pleading allowed by the federal rules requires the complaint to include the operative facts upon which a plaintiff bases his claim."); see e.g., *Mayfield v. NASCAR*, 674 F.3d 369, 377-78 (4th Cir. 2012) (finding boilerplate allegations to be "precisely the sort of allegations that Twombly and Iqbal rejected.").

Thus, Defendant Match.com LLC's ACPA claim should be dismissed because

Defendant Match.com, LLC's only allegation of use of the Domain Name is with a website that provides internet search engine results to visitors and this alone cannot be evidence of intent to use the Domain Name in bad faith. Defendant Match.com LLC's ACPA claim should also be dismissed because it has not adequately alleged another essential element of an ACPA claim, namely that the Asserted Marks were famous or distinctive at the time the Domain Name was registered.

### E.   Defendant Match.com, LLC's Fifth and Sixth Counts For Violation of the Florida Deceptive and Unfair Trade Practices Act and Common Law Trademark Infringement Fail.

Defendant Match.com, LLC's fifth and sixth Counts are also based on the Plaintiff Eddy's purported use in commerce of the Alleged Marks. Pursuant to Fla. State 501.204(1), FDUTPA requires an "[u]nfair method[] of competition, unconscionable act[] or practice, or an "unfair or deceptive" act or practice." Defendant Match.com, LLC bases its FDUTPA Claim, like each of its other Claims, on Plaintiff Eddy's alleged use of the Domain Names to deceive consumers. (Counterclaim ¶ 57.) The Counterclaim provides insufficient facts to allege the Plaintiff Eddy used the Domain Names in commerce, and Defendant Match.com, LLC simply cannot demonstrate any likelihood of confusion and Defendant Match.com, LLC's failure to demonstrate likelihood of confusion as to their Lanham Act claims is fatal to its FDUTPA claims. *Custom Mfg. & Eng'g, Inc. v. Midway Servs.*, No. 05-12906, 2007 WL 4165634, *7 (11th Cir. Nov. 21, 2007). Since the Counterclaim provides insufficient facts to allege the Plaintiff Eddy used the Domain Names in commerce, and Defendant Match.com, LLC cannot demonstrate any likelihood of confusion or even allege facts that would lead to use showing of an "[u]nfair method[] of competition, unconscionable act[] or practice, or an "unfair or deceptive" act or practice," Defendant Match.com, LLC fails to state a

*Liz Eddy D/B/A Hostphere.com v. Match.com, LLC et al.*
CASE NO.: 12-23153-CIV-COOKE/TURNOFF

claim for violation of the Florida Deceptive and Unfair Trade Practices Act  and this claim should be dismissed.

The sixth Claim is brought under Common Law infringement based on Plaintiff Eddy's allegedly "using the Domain Name" and by "promoting and advertising identical and /or confusingly similar services as the Match Services at the Domain Name." (Counterclaim ¶ 59.)  Defendant Match.com, LLC does not allege facts sufficient to indicate that Plaintiff Eddy used the Domain Name in connection with her own goods and services (as opposed to search results). The Counterclaim provides no more basis for its state law claims than for its federal claims. As such, Defendant Match.com LLC's state-law claim and claim for common law trademark infringement fail, and should be dismissed.

### F.   Defendant Match.com, LLC's Seventh Count For Common Law Unfair Competition Fails.

Defendant Match.com, LLC's seventh Count is based on the Plaintiff Eddy's purported activites of use in commerce of the Alleged Marks. Defendant Match.com, LLC's alleges that Plaintiff Eddy's activities of use of the Asserted Marks "constitute unfair competition because such use by Eddy is likely to cause confusion, mistake and deception as to the origin of services sold or provided in connection with the Domain Name, and it is likely to mislead potential consumers and consumers into believing that such services are somehow affiliated with, or are sponsored, authorized, approved or sanctioned by Match, or that services sold or provided under the MATCH Marks are somehow affiliated with Eddy." (Counterclaim ¶ 68.)

> Even giving the phrase "unfair competition" its broadest ordinary meaning, the offense must include at least two elements, "unfairness" and "competition." This requirement that the offense include an element of rivalry is consistent with the plain meaning of the words and with recognized definitions.

18

*Practice Mgmt. Assoc., Inc. v. Old Dominion Ins. Co.*, 601 So. 2d 587, 588 (Fla. 1st DCA 1992). Plaintiffs' Complaint does not provide facts sufficient to allege unfairness – Plaintiff Eddy registered the Domain Name and provides search results to others at the website associated with that Domain Name and this is not activity or conduct which is unfair to Defendant Match.com, LLC. Further, there is no "competition" since the alleged facts do not support Defendant Match.com, LLC's claim that Plaintiff Eddy used the Domain Names to compete with Defendant Match.com, LLC. (Under Florida common law, unfair competition is an ―umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.); *Dunkin' Donuts Franchised Restaurants LLC v. D & D Donuts, Inc.*, 566 F. Supp.2d 1350, 1360 (M.D. Fla. 2008) ( Although unfair competition is a broader claim than infringement [under the Lanham Act], it also calls on the plaintiff to show confusing similarity between the services.) Defendant Match.com, LLC's alleged claim of unfair competition provides no basis for its claim just as its claims fail under its other state and federal claims. Accordingly, Defendant Match.com, LLC's seventh Claim for state law unfair competition should also be dismissed.

## III.      CONCLUSION

Defendant Match.com LLC's Counterclaim does not allege facts sufficient to support its conclusory assertions regarding alleged use of the Domain Name in commerce and this is fatal to its Claims for Federal Trademark Infringement, Federal Unfair Competition, False representation and False Designation of Origin, Federal Dilution, Florida's Unfair and Deceptive Trade Practices Act, Common Law Trademark Infringement, and Common Law Unfair Competition.

Defendant Match.com, LLC also does not allege facts sufficient to support their contention that Defendant Match.com, LLC's Asserted Marks were famous or even distinctive in September 2000, the date the Domain Name was registered, an element which would be required for any finding of a violation of Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

Defendant Match.com, LLC's allegations do not establish that the Asserted marks are famous or can ever be famous, a required element of the Claim of Federal Dilution. For these reasons, Plaintiff Eddy respectfully requests that this Court dismiss Defendant Match.com, LLC's Counterclaim in its entirety.

WHEREFORE, Plaintiff Eddy respectfully requests that the Court dismiss the Counterclaim for Federal Trademark Infringement, Federal Unfair Competition, False representation and False Designation of Origin, Federal Dilution, Violation of Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), Florida's Unfair and Deceptive Trade Practices Act, Common Law Trademark Infringement, and Common Law Unfair Competition in its entirety and provide the Plaintiff Eddy with such other and further relief as the Court deems just and proper.

Respectfully submitted,

DATED: April 24, 2013

Liz Eddy DBA HOSTSPHERE.COM
Email: docket@hostsphere.com
2683 Via De La Valle, Suite G510
Del Mar, CA 92014
Telephone: (619) 885-8500
Facsimile: (800) 743-9260
*Pro se*

*Liz Eddy D/B/A Hostphere.com v. Match.com, LLC et al.*
CASE NO.: 12-23153-CIV-COOKE/TURNOFF

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 24, 2013, I served a true and correct copy of the foregoing with the Clerk of the Court via U.S. Mail. I also certify that the foregoing is being served this day on all counsel of record identified in the Service List via electronic mail and via U.S. Mail.

LIZ EDDY

## Service List

*Via e-mail and via regular U.S. Mail*

Alan Graham Greer, Esq.
Email: agreer@richmangreer.com
Chad Gottlieb, Esq.
Email: cgottlieb@richmangreer.com
Mark Anthony Romance, Esq.
Email: mromance@richmagcreer.com
Richman Greer, P.A.
396 Alhambra Cir.
North Tower, 14th Floor
Miami, Florida 33134
Tel: (305) 373-4000
Fax: (305) 373-4099
*Counsel for Defendant / Counter-Plaintiff Match.com, L.L.C.*

Janet T. Munn, Esq.
Email: jmunn@rascoklock.com
RASCO KLOCK, ET AL.
283 Catalonia Avenue, Suite 200
Coral Gables, FL 33134

**AND**

Jedediah Wakeñeld, Esq.
(Admitted Pro Hac Vice)
jwakeñeld@fenwick.com
Sean S. Wikner, Esq.
(Admitted Pro Hac Vice)
swikner@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
*Counsel for Defendant / Counter-Plaintiff Citizenhawk, Inc.*

*Liz Eddy D/B/A Hostphere.com v. Match.com, LLC et al.*
CASE NO.: 12-23153-CIV-COOKE/TURNOFF

# EXHIBIT "1"

Related Searches

**Match Singles Dating**

**Free Dating com**

**Match Singles**

**Online Dating Match**

**Match com Dating**

**Christian Dating Match**

**Dating Match**

**Singles Match**

**Christian Singles Dating**

**Dating Indian Women**

Sponsored Listings

## Match.com® Official Site
More Dates, More Marriages, More Relationships. It's I
www.**match**.com/

## Dating Match Over 40
Meet Mature, Sincere Singles Everyone is Serious and
www.maturesinglesonly.com/

Get A Free Matchmaking
Consultation
Not Online Dating - We're
Better

Everyone Screened
Profiles
Meet Singles Over 4
Guaranteed

## Dating in Orange County
Too Busy to Date? We Can Help! It's Just Lunch Orang
www.itsjustlunchorangecounty.com/

## Meet Singles 50 Plus
Southern CA Area Matchmaking Relationship-minded
Only!
www.matureprofessionalsingles.org/

## Los Angeles Asian Dating
**Dating** Was Meant To Be Simple. Let Us Take The Wo
**Dating**!
www.itsjustlunchlosangelessouthbay.com/

## Free Christian Dating
Share Your Life. Share Your Faith. Join 5+ Million Reg
www.christianmingle.com/

+ Meet Christian Men   + Meet Christian Women
+ Meet Local Christians  + 1000s of New Members D

## Zoosk.com® Online Dating
Find Attractive Singles Nearby. See Pictures & Profiles
www.zoosk.com/**Dating**/Search

# EXHIBIT "2"



**NATIONAL ARBITRATION FORUM**
**P. O. Box 50191**
**Minneapolis, MN  55405**

| | | |
|---|---|---|
| **Match.com, LLC** | ) | **Domain Name(s)** |
| _____ | ) | *MACTH.COM* |
| **Complainant** | ) | |
| | ) | **COMPLAINANT'S** |
| | ) | **PRE-COMMENCEMENT** |
| | ) | **REQUEST TO WITHDRAW** |
| **Registrant [1961893]: /** | ) | **COMPLAINT WITHOUT** |
| **Domain Administrator / Hostsphere.com** ) | | **PREJUDICE** |
| | ) | |
| _____ | ) | |
| **Respondent** | ) | **File Number: FA1207001451592** |

Pursuant to the Forum's Supplemental Rule 12(a), the Complainant acknowledges that the above captioned Complaint has not Commenced and hereby requests that the Complaint be withdrawn without prejudice.

Respectfully Submitted,

*Brody Stout*

By:     _____
           Brody Stout
           Authorized Representative for Complainant

           July 31, 2012
Dated:_____

# EXHIBIT "3"

# **match**.com®

To Whom It May Concern:

Please be advised that Match.com, LLC is the registered owner of numerous trademarks including: U.S. Reg. No. 2,088,545 for the mark "Match.com" and U.S. Reg. No. 3,749,208 for the mark "Chemistry.com" (the "Marks"). Match.com has invested considerable time and money establishing proprietary rights in the Marks as evidenced by their U.S. trademark registration. Match.com is and has been using the Marks continuously and employs the Marks for computer services, namely, providing information regarding, and in the nature of, on-line dating and introduction services; matchmaking services featuring matching and guided communication of participants in conjunction with an automated, anonymous scheduling service; matchmaking services, namely, providing an online database of personal ads.

Match.com, LLC authorizes CitizenHawk, Inc. (a California corporation) ("CitizenHawk") to seek to recover Internet domain names that are one-character misspellings of Match.com's primary domain name(s) or otherwise identified as trademark infringing so long as such "typosquatting" domain names are owned by individuals or entities other than Match.com or its authorized representatives. CitizenHawk will manage the domain names at the ICANN certified registrar of its choice and will provide the technical infrastructure to support the traffic forwarding mechanism.

Please forward any questions to CitizenHawk. Thank you for your cooperation.

Regards,

Brittany Perez
Associate General Counsel
Match.com, LLC